## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

In the Matter of:                                              Case No.:
**MICHAEL WILLIAM BATEMAN**                 **11-09646-8-DMW**
**Debtor**                                                     Chapter 11

### FINAL REPORT

The undersigned counsel for the Debtor files this Final Report with the Court as follows:

The Order confirming the Debtor's First Amended Plan of Reorganization ("Plan") was

entered by this Court on January 11, 2013. The Debtors' compliance with the provisions of the Plan

and Order is as follows:

### Class I – Administrative Claims

*Treatment*:  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment on the Effective Date of the Plan, or upon such other terms as the parties may mutually agree.  The Debtor estimates that these claims will total approximately $25,000; however, while this is the Debtor's best estimate, there can be no assurance that the actual fees will not in fact exceed this amount, especially if there is substantial opposition to the Disclosure Statement and/or confirmation, or if the Debtor is involved in protracted litigation.

*Compliance*:  The Debtor is **not** in compliance with the terms of the Plan.

### Class II – Ad Valorem Tax Claims

*Treatment*: Ad valorem tax claims, if any, shall be paid periodically from the proceeds of sale of the Debtor's real property assets in accordance with priorities established by the Bankruptcy Code, or shall be treated in accordance with the treatment afforded Class III Priority Tax Claims.

*Compliance*:  Ad valorem tax claims have been paid in full.

### Class III – Priority Tax Claims

*Treatment*:  **Unsecured Priority Tax Claims**, as allowed by the Bankruptcy Court and as described in Sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code,

- 1 -

shall receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Priority Tax Claim, with interest on such amount from the Effective Date at an annual rate of interest of 4%. The Class III Unsecured Priority Tax Claims shall be paid in equal quarterly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth anniversary of the date of the order for relief. Payments shall commence on the first day of the third full month following the Effective Date. Unsecured Priority Tax Claims may be prepaid at any time without premium or penalty.

The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date, such cure period to begin the 1st day of any month during which a payment is due and not paid and continuing for 30 days thereafter. Upon the Debtor's failure to cure any delinquent payment, holders of tax claims shall be entitled to exercise such remedies as deemed appropriate by the taxing authority and permitted by law.

The Debtor further agrees that if he seeks entry of his discharge pursuant to 11 U.S.C. § 1141(d)(5)(B), that such entry of discharge will not have any effect on priority tax claims, and discharge of those claims will follow the provisions of 11 U.S.C. § 1141(d)(5)(A) and shall not be discharged until the debtor completes all payments to IRS under the Chapter 11 Plan. Furthermore, the rights of the North Carolina Department of Revenue ("Department") to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. §105-159. Notwithstanding any other provisions of the Plan and the confirmation order, the North Carolina Department of Revenue shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date.

Unsecured Priority Tax Claims that are **Costs and Expenses of Administration** shall be paid in cash in accordance with the treatment afforded Class I creditors.

**Secured Tax Claims** shall retain their secured interest in the property of the Debtor in a manner consistent with the pre-petition security interests and liens asserted by the taxing authority, and receive deferred cash payments over a period ending no later than five years after the date of the order for relief, of a value, as of the Effective Date, equal to the full amount of such Secured Tax Claim, with interest on such amount from the Effective Date at an annual rate of interest of 4%. The Class III Secured Tax Claims shall be paid in equal quarterly installments of principal and interest, with all unpaid principal and accrued interest due on the fifth

anniversary of the date of the order for relief. Payments shall commence on the first day of the third full month following the Effective Date. Secured Tax Claims may be prepaid at any time without premium or penalty.

The Debtor shall have a period of thirty (30) days to cure any plan payment not made upon the due date, such cure period to begin the 1st day of any month during which a payment is due and not paid and continuing for 30 days thereafter. Upon the Debtor's failure to cure any delinquent payment, holders of tax claims shall be entitled to exercise such remedies as deemed appropriate by the taxing authority and permitted by law.

**Unsecured General Tax Claims** shall be treated in a manner consistent with the treatment afforded creditors holding General Unsecured Claims.

*Compliance*: The Debtor is in compliance with the terms of the Plan.

### Class IV – Branch Banking & Trust Company ("BB&T")

*Treatment*: This obligation shall be bifurcated into a fully-secured claim in an amount equal to $350,000, and a General Unsecured Claim comprising all amounts claimed by BB&T in excess of $350,000. As to the secured portion of this claim, this creditor shall retain its liens on property owned by the Debtors pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such secured portion is paid in full. The Debtor has, with the approval of the Bankruptcy Court, contracted to sell Lots 4, 5 and 6, and has paid BB&T the net proceeds generated by that sale. BB&T shall be permitted a residual secured claim (hereafter the "Secured Claim") in the amount of $265,000, which shall incur annual interest at the fixed rate of 9.75%. The Secured Claim shall be amortized over a period of 180 months and payable by way of 59 equal amortized payments of principal and interest commencing the first day of the first full month following the Effective Date. On the first day of the 61st full month following the Effective Date, the remaining balance of the Secured Claim, together with any unpaid and accrued interest, shall be fully due and payable.

The Debtor shall also market and liquidate the development lots comprising BB&T's collateral over a period of 60 months from and after the Effective Date utilizing a real estate broker or by marketing efforts coordinated by the Debtor directly. The Debtor shall pursue both sales of single lots, in accordance with the Debtor's pre-petition sales activity, and bulk sales of Debtor inventory, both in a manner intended to maximize income and the repayment of claims.

All lots shall be subject to a release fee that shall, when paid, allow the lot(s) to be conveyed free and clear of BB&T's lien. The release fees shall be equal to seventy percent (70%) of the net proceeds of sale, whereby "net sales proceeds" shall

equal gross proceeds less ordinary and necessary costs of closing, including attorneys' fees, deed preparation, pro-rated taxes, and other necessary and ordinary costs. BB&T shall release any lot or lots proposed for sale if the following conditions are satisfied at the time of sale:

i.    The Debtor must be current on his monthly payments of the Secured Claim.

ii.    All proceeds from any partial release will be applied to principal reduction and will not be treated as a substitute for regular monthly payments of the Secured Claim.

iii.    The remaining balance of the Secured Claim shall remain fully secured following any partial release of collateral.

The remaining unsecured portion of the this creditor's claim (the "Unsecured Claim") shall be treated in a manner consistent with the treatment afforded the holders of General Unsecured Claims, and any amounts remaining unpaid at the conclusion of that proposed treatment shall be deemed extinguished.

Upon the Debtor's failure to cure any delinquent payment within the time permitted by the pre-petition loan documents, BB&T shall be entitled to exercise any and all state law remedies it may deem appropriate. The Debtor shall execute such loan documentation as BB&T may reasonably require to reflect this treatment

*Compliance*: The Debtor is in compliance with the terms of the Plan.

### Class V – Branch Banking & Trust Company ("BB&T")

*Treatment*: The Debtor shall object to any judgment lien created by this claim as a preferential conveyance pursuant to Section 547 of the Bankruptcy Code, in that the judgment was a transfer to or for the benefit of a creditor on account of an antecedent debt owed by the Debtor before such transfer was made, and made while the Debtor was insolvent within 90 days before the date of the filing of the Debtor's Chapter 11 petition. The judgment lien shall not be avoided until the appropriate motion to avoid the lien is filed by the Debtor and such motion is granted by the Court. Upon avoidance of any pre-petition judgment lien the claim shall be treated as a General Unsecured Claim.

*Compliance*: The Debtor shall object to any judgment lien created by this claim as a preferential conveyance pursuant to Section 547 of the Bankruptcy Code, in that the judgment was a transfer to or for the benefit of a creditor on an account of an antecedent debt owed by the Debtor before such transfer was made, and made while

the Debtor was insolvent within 90 days of the day of the filing of the Debtor's Chapter 11 petition.

### Class VI - Branch Banking & Trust Company ("BB&T")

*Treatment*:  This obligation, plus non-default interest and costs as may be allowed by the Court pursuant to 11 U.S.C. § 506(b), shall be treated as a single, fully-secured claim.  This creditor shall retain its liens pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this claim is paid in full.   The claim shall accrue interest at the fixed annual rate of 4.5% and shall be paid by way of 360 equal monthly payments of principal and interest commencing the first day of the first full month following the Effective Date; remaining payments shall be made on the first day of each month thereafter until this obligation is paid in full.

Upon the Debtor's failure to cure any delinquent payment within the time permitted by the pre-petition loan documents, BB&T shall be entitled to exercise any and all state law remedies it may deem appropriate.  The Debtors shall execute such loan documentation as BB&T may reasonably require to reflect this treatment, including but not limited to any documents necessary to extend the validity of BB&T's lien to reflect this treatment.

*Compliance*:  The Debtors are in compliance with the terms of the Plan.

### Class VII -  Catherine Bateman

*Treatment*: In accordance with that Order of the Bankruptcy Court dated December 21, 2012, the Debtor shall, on or before the Effective Date and in full satisfaction of Ms. Bateman's claim against the bankruptcy estate, execute a deed to Ms. Bateman conveying any interest the Debtor has in that certain real estate located at 8344 Lilybet Lane, Charlotte, North Carolina.

*Compliance*:  Settled by compromise, no amount due.

### Class VIII –  General Unsecured Claims

(3)     *Treatment*:  In accordance with the liquidation analysis attached to the Disclosure Statement as Exhibit D, and the provisions of 11 U.S.C. § 1129(a)(15), the Debtor shall pay creditors in the Class that hold allowed claims the aggregate sum of $10,000.  Such payments, whether from sale proceeds or net disposable income, shall be made over the 60-month period following the Effective Date by periodic installments payable pro-rata to creditors in this Class.  Upon the liquidation of such assets or the proceeds therefrom, and the satisfactory completion of this payment

schedule, the Debtor shall not be under any further or continuing obligation to creditors in this class, and the respective claims of each shall be deemed satisfied and extinguished.

*Compliance*:  $10,000.00 has been disbursed by David J. Haidt after a review of the unsecured claims in this case, and this treatment has been satisfied.

*Other*:  Quarterly fees for the first quarter of 2016, through February 25, 2016, in the amount of $ _325_.00 have been deposited in trust by counsel for the Debtor and will be paid to the Court prior to entry of the final decree.

Respectfully submitted, this the 25 th day of February, 2016.

AYERS & HAIDT, P.A.

By: */s/ David J. Haidt*
David J. Haidt
N.C. State Bar #22092
Attorneys for Debtor
P.O. Box 1544
New Bern, NC 28563
(252) 638-2955 telephone
(252) 638-3293 facsimile
davidhaidt@embarqmail.com

MICHAEL WILLIAM BATEMAN

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I this day have served a copy of the foregoing Final Report upon the parties listed below by electronic service or by depositing a copy thereof in an envelope bearing sufficient postage in the United States mail addressed to counsel for said parties, this the 25 th day of February, 2016.

DATED:        February 25, 2016

/s/  David J. Haidt
DAVID J. HAIDT
N.C. State Bar #22092
AYERS & HAIDT, P.A.
P.O. Box 1544
New Bern, NC  28563
(252) 638-2955


TO:    Marjorie K. Lynch (via CM/ECF)

## EXHIBIT A:  CHAPTER 11 QUARTERLY FEES

Disbursements include: Sum total of disbursements from all bank accounts, including payments of operating expenses and payments to secured creditors and lessors.  Disbursements do not include transfers between accounts. Quarterly fees are not prorated.

*1st Quarter*
Disbursements for January, 20 *16* :   *2,127.08*
Disbursements for February, 20 *16* :   *2,609,15*       Amount of Fee Due: *325.00*
Disbursements for March, 20___ :   _____       Amount Paid: *325.00*

Total Disbursements for the 1st Quarter: _____

*2nd Quarter*
Disbursements for April, 20___ :   _____
Disbursements for May, 20___ :   _____       Amount of Fee Due: _____
Disbursements for June, 20___ :   _____       Amount Paid: _____

Total Disbursements for the 2nd Quarter: _____

*3rd Quarter*
Disbursements for July, 20___ :   _____
Disbursements for August, 20___ :   _____       Amount of Fee Due: _____
Disbursements for September, 20___ :   _____       Amount Paid: _____

Total Disbursements for the 3rd Quarter: _____

*4th Quarter*
Disbursements for October, 20___ :   _____
Disbursements for November, 20___ :   _____       Amount of Fee Due: _____
Disbursements for December, 20___ :   _____       Amount Paid: _____

Total Disbursements for the 4th  Quarter: _____

**Calculating the Fee:** Use the table on the following page to compute the Amount of Fee Due for each quarter.

**If the amount paid differs from the amount due, please provide an explanation:**